IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROGER ANTHONY ETKINS, | ) | |
|     Plaintiff | ) | C.A. 10-216 Erie |
| | ) | |
|     v. | ) | District Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| JUDY GLENN, et al., | ) | |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss complaint or, in the alternative, for summary judgment [ECF No. 21], be granted, and that this case be dismissed.

**II.    REPORT**

    **A.    Relevant Procedural History**

On September 1, 2010, Plaintiff Roger Anthony Etkins, a prisoner formerly incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean")[1], filed a *pro se* civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), along with a brief in support thereof. [ECF Nos. 3,4]. Named as Defendants are: Judy Glenn, who, at all times relevant to this lawsuit, was a nurse practitioner employed by Public Health Services and assigned to FCI-McKean ("Glenn"); Rodney Smith, who, at all times relevant to this lawsuit, was Health Services Administrator at FCI-McKean ("Smith"), and Eric Asp, a physician's assistant at FCI-McKean ("Asp").

---

[1] Plaintiff is presently incarcerated at the U.S. Penitentiary at Canaan in Waymart, Pennsylvania.

In his *pro se* Complaint, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. In addition, Plaintiff claims that Defendant Glenn assaulted him by striking him in the left shoulder with a door, in violation of his Eighth Amendment rights. As relief for his claims, Plaintiff seeks compensatory and punitive damages.

Defendants have filed a motion to dismiss complaint or, in the alternative, for summary judgment, asserting that: (i) Plaintiff has failed to exhaust his administrative remedies with regard to his claims against Defendant Glenn; (ii) Plaintiff's claims against Defendant Glenn should be dismissed, in any event, because she is statutorily immune from Plaintiff's lawsuit and/or has not been properly served; (iii) Plaintiff has failed to state a cause of action upon which relief may be granted against either Defendant Smith or Defendant Asp; and (iv) Defendants are entitled to qualified immunity. Plaintiff has filed a response to Defendants motion [ECF No. 25], and Defendants have filed a reply to Plaintiff's response [ECF No. 26]. Plaintiff has also filed his own motion for summary judgment, to which no response has been filed. [part of ECF No. 28]. This matter is now ripe for consideration.

**B.**  **Relevant Factual History**

Plaintiff alleges that on April 29, 2009, he was on medical call-out to have the results of an ultrasound and an x-ray read to him. (ECF No. 3, Complaint, at Section IV.C). Defendant Glenn escorted Plaintiff to the examination room, at which time Plaintiff lifted his left pant leg to show her that his knee "was still quite swollen." (Id.). Defendant Glenn allegedly responded, "oh, it's not that bad, you need to toughen up," and then denied Plaintiff's request for a "knee brace or ace wrap." (Id.). Defendant Glenn then read the test results, after which Plaintiff told her that even though he was taking pain medication, he still suffered from chronic testicular and knee pain. (Id.). According to Plaintiff, Defendant Glenn became "irritated," opened the door, and told him he should leave. Plaintiff alleges that when he was half-way through the door,

2

Defendant Glenn forcefully struck him on the left shoulder with the door, and used the door to push him out into the hallway. (Id.). A few minutes later, Defendant Glenn led Plaintiff back to the waiting area.

As Plaintiff was leaving the medical department, Defendant Glenn asked Defendant Smith about the knee wrap, to which Defendant Smith allegedly responded, "no, he gets nothing." (Id.). Later the same day, Plaintiff was placed in the Special Housing Unit ("SHU"). After being placed in the SHU, Plaintiff was given the eye drops he had been taking for glaucoma, but was not given his prescription pain medication. Four days later, Plaintiff stopped Defendant Smith on his walk through and asked him about the pain medication. Defendant Smith allegedly responded "nah, you ain't getting it that easy, it's not an emergency." (Id.).

On May 12, 2009, Defendant Asp went to Plaintiff's cell, at which time Plaintiff explained that he had not received his pain medication and requested a knee wrap. Defendant Asp allegedly told Plaintiff that he could not get a knee wrap "because of policy." (Id.). Plaintiff later received his pain medication on May 22, 2009, and ultimately received a knee sleeve on July 7, 2009. (Id.).

### C. Standards of Review
#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show"

4

> such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56©. The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a

scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322.  See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson, 477 U.S. at 248.  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 247-249.

### **3.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Exhaustion of Administrative Remedies

Defendants argue that, with regard to Plaintiff's claims against Defendant Glenn, he has failed to exhaust his administrative remedies in accordance with the requirements of the PLRA, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until *such administrative remedies as are available* are exhausted.

Id.[2] (emphasis added).

#### 1. Exhaustion Standard

---

1

It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[4]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004)

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that c1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth*, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

(utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

## 2. The Administrative Process Available to Federal Inmates

To determine whether Plaintiff has exhausted the administrative remedies required by the Bureau of Prisons' grievance system, an understanding of the administrative process available to federal prisoners is essential. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 107 U.S. at 217.

The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997). First, "an inmate shall ... present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP-9), [within] 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The warden has twenty (20) days in which to respond. 28 C.F.R. § 542.18. An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response. 28 C.F.R. § 542.15(a). An

inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response. Id. The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond. 28 C.F.R. § 542.18.

### **3.** **Analysis**

Defendants assert that Plaintiff has failed to properly exhaust his administrative remedies with regard to his claims against Defendant Glenn. This assertion is supported by the Declaration of Vanessa Herbin-Smith, a Supervisory Paralegal for the BOP's Northeast Regional Office, who certifies the following:

> 6. Following a search of inmate Etkins' administrative remedy index, I determined the following:
>
>    a. He fully exhausted his available administrative remedies with respect to the alleged delay and/or denial of pain medication and a knee sleeve, while he was assigned to the SHU at FCI-McKean.
>
>    b. He has not fully exhausted his available administrative remedies regarding the alleged assault by Defendant Glenn with the examination room door.
>
> 7. Inmate Etkins' Administrative Remedy records reflect the following:
>
>    (a) Since his designation to FCI McKean on February 27, 2009, he has filed 22 Administrative Remedy Requests and/or Appeals.
>
>    (b) Of inmate Etkins' 22 Administrative Remedy submissions inmate Etkins filed after his designation to FCI McKean, ten (10) involved medical and/or staff issues at FCI-McKean and twelve (12) involved issues and complaints which arose while he was incarcerated at USP Canaan.
>
>    © Of the 10 Administrative Remedy filings concerning issues that arose at FCI McKean, six (6) were filed in connection with Case Number 539093, in which he requested pain medication and an MRI. Case Number 53903 was fully exhausted.
>
>    (d) The remaining four (4) Administrative Remedy filings were filed in Case Number 544651, in which inmate Etkins raised a staff complaint concerning an incident which occurred on April 29, 2009. It is possible the staff member who was subject to these

filings was Defendant Glenn. However, each of inmate Etkins' Administrative Remedy filings for Case Number 544651 was rejected without a substantive response, because of the following technical errors:

    (i)    On June 22, 2009, inmate Etkins filed Case Number 544651-F1, in which he raised a complaint regarding a staff member at FCI McKean in connection with an incident which arose on April 29, 2009. On June 25, 2009, Case Number 544651-F1 was rejected without a substantive response because inmate Etkins did not file his Request for Administrative Remedy until after the filing deadline. In this case, he grieved an incident which he alleged arose on April 29, 2009; however, he waited until June 22, 2009, in which to file his Administrative Remedy Request. Under 28 C.F.R. § 542.14(a) inmates have 20 calendar days from the date of the incident in which to file an Administrative Remedy Request.

    (ii)    On July 16, 2009, inmate Etkins filed Case Number 544651-F2, in which he raised a complaint regarding a Health Services staff member. On August 17, 2009, an explanatory response was provided to him. The response neither granted nor denied his Administrative Remedy Request.

    (iii)    On September 21, 2009, inmate Etkins appealed the institution's Response in Case Number 544651-F2 to the Bureau of Prisons Central Office (Case Number 544651-A1). On January 11, 2010, inmate Etkins' Central office Administrative Remedy Appeal was rejected without a substantive response. Inmate Etkins was advised he needed to appeal to the Regional Office before he could appeal to the Central Office.

    (iv)    On November 9, 2009, inmate Etkins filed a Central Office Administrative Remedy Appeal in Case Number 544651-A2. It was accepted in error; and it was noted that it should have been rejected.

8.    Inmate Etkins has filed no other Administrative Remedy Requests concerning staff or incidents that arose at FCI McKean. Thus, to date, inmate Etkins has fully exhausted his available administrative remedies (for incidents and staff complaints arising a FCI-McKean) only in Case Number 539093, in which he requested an MRI and pain medication. He has not exhausted his available administrative remedies regarding any issue involving or related to Judy Glenn, ...

(ECF No. 22-1, Declaration of Vanessa Herbin-Smith, at ¶¶ 6-8).

Plaintiff has failed to present any arguments or documentary evidence sufficient to

overcome Ms. Herbin-Smith's Declaration that he failed to fully exhaust his administrative remedies with regard to any of his claims against Defendant Glenn. As a result, summary judgment should be entered in favor of Defendant Glenn and against Plaintiff on all claims against Defendant Glenn, based upon Plaintiff's failure to exhaust his administrative remedies.[5]

### E. Discussion

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[6] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

---

[5] Because the court has determined that Plaintiff failed to exhaust his administrative remedies as to all claims against Defendant Glenn, there is no need to address Defendant Glenn's additional arguments based upon statutory immunity and failure of proper service.

[6] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

### 1. Defendant Smith

Plaintiff claims that Defendant Smith refused to provide him his "already prescribed pain medication" in the SHU, allegedly telling Plaintiff "you ain't getting it that easily, it's not an emergency." (ECF No. 4, Plaintiff's Memorandum in Support of Complaint, at p. 4; ECF No. 3, Complaint, at pp. 5-6). Defendants respond by arguing that, at the time in question, Defendant Smith was the Health Services Administrator and did not render medical care or treatment to inmates, nor was he authorized to prescribe pain medication.

As a Health Services Administrator, Defendant Smith is considered a non-medical prison official in the context of a Section 1983 denial of medical care claim. See Spencer v. Beard, 2010 WL 608276, *4 n. 5 (W.D.Pa. Feb. 17, 2010), citing Hull v. Dotter, 1997 WL 327551, *4 (E.D.Pa. June 12, 1997); Freed v. Horn, 1995 WL 710529, *3-4 (E.D.Pa. Dec. 1, 1995). In Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993), the Third Circuit held that non-medical prison officials cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the

prison medical staff. Here, Plaintiff's allegations indicate that he was treated by Defendants Glenn and Asp. Thus, Plaintiff has failed to establish that Defendant Smith was deliberately indifferent to his serious medical needs, and his Eighth Amendment claim against him should be dismissed accordingly.

### 2. Defendant Asp

Plaintiff alleges that Defendant Asp saw him in the SHU on May 12, 2009, at which time Plaintiff requested his pain medication and a knee wrap. According to Plaintiff, Defendant Asp informed him that BOP policy prevented SHU inmates from wearing knee wraps. In addition, Plaintiff alleges that Defendant Asp told him that pain medication would be provided; however, the pain medication did not arrive until May 22, 2009. Based on these allegations, Plaintiff claims that Defendant Asp was deliberately indifferent to his serious medical needs by delaying his pain medication and denying him a knee wrap. The record evidence proves otherwise.

According to Plaintiff's medical records, Defendant Asp renewed Plaintiff's prescription pain medication Sulindac on the very day it was requested by Plaintiff – May 12, 2009. (ECF No. 22-3 at p. 45). In addition, the record reflects that Plaintiff first requested a knee sleeve from Defendant Asp on July 7, 2009, and, in response, Defendant Asp ordered a knee brace that same day. (ECF No. 22-3 at p. 37). Thus, Defendant cannot be said to have been deliberately indifferent to Plaintiff's medical needs and summary judgment should be entered in his favor accordingly.

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss Plaintiff's complaint or, in the alternative, for summary judgment, be granted, and that this case be dismissed.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>/s/ Susan Paradise Baxter</u>  
SUSAN PARADISE BAXTER  
United States Magistrate Judge

Dated: October <u>18</u>, 2011

cc: The Honorable Sean J. McLaughlin  
     United States District Judge